## THE STATE v. THOMAS O'BRIEN, Appellant.

### Division Two, May 26, 1910.

1. **VARIANCE: Registration: Allegation, John Murphy: Proof, John Murpy.** An allegation that defendant registered as a voter under the name of "John Murphy" and proof that he registered the name "John Murpy," do not constitute a variance, where the proof is that both before he registered and after his arrest defendant stated his name was John Murphy. His writing of "John Murpy" in the books was simply a misspelling of the name he assumed for a fraudulent purpose.

2. ————: **Matter for Trial Court.** Under Sec. 2534, R. S. 1899, it is for the trial court to determine whether "any variance between the statement in the indictment and the evidence offered in proof thereof, in the Christian name or surname of the defendant," is material.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields*, Judge.

AFFIRMED.

*C. Orrick Bishop* for appellant.

(1) The indictment in this case charges that the appellant "then and there unlawfully, feloniously, willfully, knowingly, falsely and fraudulently did sign said registers, poll books and books of registration of said election precinct, in the margin on said books provided for the signatures of registered electors and voters, under the said name John Murphy, by writing on said books the words and name "John Murphy." It appeared from the evidence that there were four books of registration kept by the registration officers for each precinct, on each of which the applicant for registration was required to write and sign his name, to-wit, (1) an original registry book; (2) a copy of the original registry book; (3 and 4) two primary books, copies or counterparts of each other. These four books, alleged to have been used at the general registration on September 14, 1908, were admitted in evidence, as having been signed at the alleged time and place by appellant and were identified by the officers of registration as the books, and the only books, used by them at the time and place charged in the indictment; and in each of the books the purported signature is "John Murpy," and nowhere were the "words and name John Murphy," written by this appellant. This was a fatal variance between the allegation and proof, and the demurrer to the evidence should have been sustained, and appellant's request for a peremptory instruction to acquit should have been given. State v. Judd, 221 Mo. 554. (2) And the court further erred in submitting to the jury the question whether "said defendant then and there willfully, knowingly, fraudulently and falsely signed the said official registers and books of registration by writing thereon his name as John Murphy," when there was no evidence whatever that appellant had signed the name John Murphy upon any book.

*Elliott W. Major,* Attorney-General, and *Chas. G. Revelle,* Assistant Attorney-General, for the State.

(1) An examination of the record and the contentions made by appellant in the trial court discloses that substantially all the questions presented are settled by the recent decisions of this court in the cases of State v. Cummings, 206 Mo. 624; State v. Tiernan, 223 Mo. 142; State v. Keating, 223 Mo. 86; State v. Exnicious, 223 Mo. 61, and State v. Thavanot, 225 Mo. 545. (2) The indictment charges that defendant represented that his name was John Murphy, and that he registered under and signed that name. The registration records offered in this connection disclose that as questions were asked him by the judges and his answers were given, the clerk entered such answers, and in entering the name stated by him, the clerk wrote it "John Murphy," and he was registered by the judges under that name. When he signed the register, he wrote it "John Murpy." In our opinion, this constitutes no fatal variance, and is clearly distinguishable from the question involved in the recent case of State v. Judd, 221 Mo. 554. The later case of State v. Exnicious seems more in point. R. S. 1899, sec. 2534. To the trial court alone belonged the duty of determining whether the variance was material, and the action of that court in overruling the demurrer and giving the instructions it did give, is equivalent to an affirmative finding that the variance was immaterial and not prejudicial, and to such finding this court will defer. State v. Decker, 217 Mo. 321; State v. Barker, 64 Mo. 285; State v. Smith, 80 Mo. 520; State v. Harl, 137 Mo. 256; State v. Sharp, 106 Mo. 109; State v. Walters, 144 Mo. 347; State v. Wammack, 70 Mo. 411; State v. Sharp, 71 Mo. 221; State v. Ward, 70 Mo. 255; State v. Nelson, 101 Mo. 482; State v. Dale, 141 Mo. 287.

FOX, J.—The defendant was indicted at the June term, 1908, of the circuit court of the city of St. Louis, for the offense of falsely and fraudulently registering on the election registration books of the third precinct of the Sixteenth ward of the city of St. Louis under a name not his own, to-wit, under the name of John Murphy, his true name being Thomas O'Brien. At the December term, 1908, of said court the defendant was tried and convicted of said offense, his punishment being assessed at imprisonment in the penitentiary for a term of three years and six months.

After motions for new trial and in arrest of judgment were filed and overruled, judgment was entered in accordance with the verdict, from which judgment defendant appeals to this court.

The testimony shows that, pursuant to the election laws governing the city of St. Louis, there was a general registration of the voters and electors of said city on the 14th, 15th, 16th and 17th days of September, 1908, said registration being conducted under the supervision of the election commissioners, and by judges and clerks duly appointed, sworn and qualified.

In accordance with statutory provisions, every person applying for registration was required to state, under oath, his place of residence, name, date of birth, age, occupation, duration of residence in the precinct, city and State, and certain other matters touching his qualifications and right to register as a voter. The answers of the applicant for registration were recorded in records prepared and kept for that purpose. If the answers were satisfactory to the judges, the applicant was declared a qualified voter, and the word "yes" entered opposite the name of the applicant, in a column headed by the words "qualified voter," and the applicant was then permitted to sign, at the proper place on the records, his name as a qualified voter.

On the 14th day of September, 1908, the defendant appeared before the judges and clerks of registration

of the third election precinct of the Sixteenth ward, and requested permission to register. After being duly sworn, and in answer to the prescribed questions, he stated that his name was John Murphy, and that he resided at 1119 Cass avenue, within said ward and precinct. These answers, with others, were written by the clerk in the registration records, the name given by the defendant, "John Murphy," being so entered by the clerk. The defendant then, at the proper places in said registration books, signed his name as "John Murpy," immediately after doing which, and as he was leaving the room, he was arrested by a police officer, who was present when he registered and who knew his true name to be Thomas O'Brien. He was taken to the police station where he gave his name as John Murphy. While being taken to the police station, he repeatedly requested the police officer to permit him to escape, saying, among other things, that members of his family had for many years been friends and acquaintances of the officer, and that no one would know of the occurrence if the officer would release him.

The State proved by several witnesses who were acquaintances of the defendant that the defendant's name was Thomas O'Brien. Defendant offered no testimony on his own behalf, but at the close of the evidence for the State asked the court for an instruction in the nature of a demurrer to the evidence, which was refused, to which action of the court defendant excepted, and preserved the point in his motion for a new trial.

## OPINION.

The one contention of the defendant in this case is, that there was a fatal variance between the allegations and the proof, and that the court, therefore, erred in overruling the demurrer to the evidence. As supporting his said contention, defendant cites the case

of State v. Judd, 221 Mo. 554, but which case, as we shall hereafter show, is distinguishable from the case at bar.

The indictment charges that the defendant represented to the judges and clerks of registration that his name was John Murphy, and then alleges that he, "then and there, unlawfully, feloniously, willfully, knowingly, falsely and fraudulently, did sign said registers, poll books and books of registration of said election precinct, in the margin on said books provided for the signatures of registered electors and voters, under the said name John Murphy, by writing on said books the words and name 'John Murphy.' "

The proof is strong and incontestable that the defendant did represent to the judges and clerks of registration that his name was John Murphy, and it was so entered by the clerks on the books of registration. It was shown however that when the defendant signed his name in said books, he each time wrote it "John Murpy." This was nothing more nor less than a misspelling of the name which he assumed for a fraudulent purpose, and despite the misspelling, which was doubtless due to illiteracy, there can be no doubt that the name as signed by the defendant was intended for "John Murphy." To the judges and clerks of registration he gave his name as "Murphy," and when questioned at the police station as to his name, he gave it as "Murphy."

In the Judd case, supra, to which defendant's counsel refers, the trouble was that the information contained repugnant and inconsistent charges. The information in that case charged that the defendant, Leo Judd, did then and there register under the name of Chas. Cohn, and unlawfully and feloniously pretended to the election officers that his name was Chas. Cohn, and that he was entitled to register under the name of Chas. Cohn, and that he requested the judges, etc., to enter, write and register the name of him, the said

Leo Judd, on said registration books as Chas. Cohn, and that the said judges and clerks, then and there, did enter and write upon the registers and books of registration the said name of Chas. Cohn as and for the name of him, the said Leo Judd, as a resident and qualified voter and elector of said election precinct. Then followed the charge that the defendant, Leo Judd, feloniously did sign such registers and books of registration under the same name, Chas. *Cohn*, by writing on said books the words and name Chas. *Cohen*. Thus the information charged a registration under one name and a signature of another and different name, and the court held that the allegations were repugnant in material matters, and that the defendant's demurrer to the information should have been sustained.

The indictment in this case was not assailed in the lower court, it being identical in its charging parts with the indictments approved in State v. Cummings, 206 Mo. 624; State v. Exnicious, 223 Mo. 61; State v. Tiernan, 223 Mo. 142. The Exnicious case is directly in point here. In that case the court said: "The indictment charges that he registered under the name 'Joseph Walters,' and that his proper name was that of Harry Exnicious, the name under which he was indicted. The testimony clearly shows that the original registration book was signed by him as 'Joseph Walters.' Upon the copy of the original registration book, the most that can be said of his signature was that he misspelled the name, both 'Joseph' and 'Walters.' Upon one of the primary books there was simply a mistake in the spelling of the name 'Joseph.' In the spelling of that part of his name he omitted the letter 'h,' as well as omitted from the surname the letter 's,' making it 'Walter' in place of 'Walters.' The record discloses further that on line 21, and under the heading 'Signature,' he again simply misspelled his Christian name; that is to say, spelled it 'Joseh' instead of 'Joseph.' His surname, 'Walters,' was properly spelled

in writing that signature." The court then says that the Judd case is not in point and adds: "We take it that the simple mistake in the spelling of the name in the one or two instances pointed out does not constitute a fatal variance between the allegations in the indictment and the proof offered in support of it."

Section 2534, Revised Statutes 1899, provides: "Whenever on the trial of any felony or misdemeanor there shall appear to be any variance between the statement in the indictment or information and the evidence offered in proof thereof, in the Christian name or surname, or both Christian name and surname or other description whatsoever, or [of] any person whomsoever therein named or described . . . such variance shall not be deemed grounds for an acquittal of the defendant, unless the court before which the trial shall be had shall find that such variance is material to the merits of the case and prejudicial to the defense of the defendant."

It has been many times ruled by this court that, under this section of the statute, it is for the trial court to determine whether the variance if any between the pleading and the proof is material. [State v. Decker, 217 Mo. 315; State v. Harl, 137 Mo. l. c. 256; State v. Sharp, 106 Mo. 106; State v. Wammack, 70 Mo. 411; State v. Smith, 80 Mo. l. c. 520; State v. Waters, 144 Mo. l. c. 347; State v. Sharp, 71 Mo. l. c. 221.]

In the Wammack case, supra, the court said: "So the objection to the evidence that it showed an assault on one Eyre Pile, and not on M. E. Pile, as charged in the indictment, was not well taken, since the trial court has not found that the variance is material to the merits of the case and prejudicial to the defense of the defendant. It is obvious the statute constitutes the trial court the judge of the materiality of any discrepancies between the charge in the indictment and the evidence offered in its support, and that, un-

der the statute, the defendant will not be entitled to an acquittal unless the court finds the variance between accusation and proof so great as to call for judicial interposition."

In State v. Smith, supra, it was said: "Nor is there anything in the point that the indictment charges that the assault was made on Olive Hodson, and the evidence shows that it was Mrs. Hodson. The court before which the trial was had did not find that the variance was material to the merits of the case, or prejudicial to the defense, or else, doubtless, it would have directed an acquittal. The statute governs this."

In the Decker case, supra, the court said: "In State v. Sharp, 106 Mo. l. c. 109, the variance between the charge in the indictment that the oats were taken from a car on the track of the Wabash railroad, and the proof that it was taken from a car on the track of the Wabash Western Railroad, was held not to be such a variance as operated prejudicially to the defendant; and in State v. Barker, 64 Mo. l. c. 285, the indictment charged the goods stolen were the property of R. C. Stevens, and the proof was that they were the property of Clifford J. Stevens, and it was held that while the name of the owner of the property stolen must, if known, be accurately stated and that this variance would have been fatal at common law, yet, under the above-quoted section, it was cured unless the court trying the case should find that it was material to the merits of the case, and as the court did not so find, it was no cause for reversal.

The overruling of the defendant's demurrer to the evidence, and the submission to the jury of the question whether "said defendant then and there willfully, knowingly, fraudulently and falsely signed the said official registers and books of registration by writing thereon his name as John Murphy," was in effect a finding by the court that the variance referred to

was not material to the merits of the case, or pre-judicial to the defense of the defendant.

Failing to find any reversible error in the case, we affirm the judgment. All concur.